UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
KATHERINE S. CONKLING,

        Plaintiff,   MEMORANDUM & ORDER
              10-CV-4164(JS)(WDW)
  -against-

BROOKHAVEN SCIENCE ASSOCIATES, LLC,

        Defendant.
----------------------------------------X
APPEARANCES
For Plaintiff:  Scott M. Mishkin, Esq.
       Kyle T. Pulis, Esq.
       Erik McKenna, Esq.
       Scott Michael Mishkin, P.C.
       One Suffolk Square, Suite 240
       Islandia, NY 11749

For Defendant:  Christopher A. Parlo, Esq.
       Melissa C. Rodriguez, Esq.
       Andriette A. Roberts, Esq.
       Morgan Lewis & Bockius LLP
       101 Park Avenue
       New York, NY 10178

SEYBERT, District Judge:

    Presently pending before the Court is Defendant Brookhaven Science Associates, LLC's motion to dismiss Plaintiff Katherine S. Conkling's Second Amended Complaint ("SAC"). For the following reasons, Defendant's motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND[1]

    Plaintiff was born on March 28, 1930 and is currently

---

[1] The following facts are taken from the SAC and the documents referenced therein and are presumed to be true for the purposes of this Memorandum and Order.

eighty-two years old. (Rodriquez Aff. Ex. A ¶ 1; Pulis Decl. Ex. B. ¶ 1.) In or around November 1959, Defendant hired Plaintiff as a Technical Specialist and, in or around October 1997, promoted her to Environmental Safety and Health Coordinator for its medical department. (SAC ¶¶ 6-7.) She remained in that position until February 10, 2000, when representatives from Defendant's Human Resource Department informed her that she was being terminated with severance pay, effective February 29, 2000, "due to alleged health and safety problems which occurred in her Department." (SAC ¶ 34.) Plaintiff asserts that these health and safety problems were fabricated by two of her supervisors, James Bullis and Nora Volkow, who regularly discriminated against her because of her age and gender. (SAC ¶ 35.) Defendant replaced her with a forty-year-old male who had fewer qualifications and less experience than Plaintiff. (SAC ¶ 39.)

Shortly thereafter, however, Defendant rescinded her termination and, instead, demoted her to Technical Specialist and reduced her salary by $13,000 per year. (SAC ¶¶ 36-37.) Plaintiff asserts that she was reinstated because she "demonstrated that she was being treated differently due to her age and gender" (SAC ¶ 36), however the SAC does not state how or to whom Plaintiff "demonstrated" the alleged differential treatment. Plaintiff accepted the reinstatement/demotion on or

about March 1, 2000 and is currently employed by Defendant in that capacity. (SAC ¶¶ 37-38.)

On August 1, 2010, Plaintiff filed an administrative charge (the "Charge") with the New York State Division of Human Rights ("NYSDHR") asserting that she was terminated and then demoted on account of her sex and age.[2] (Rodriquez Aff. Ex. A; Pulis Decl. Ex. B.) The NYSDHR transferred Plaintiff's Charge to the Equal Employment Opportunity Commission ("EEOC"), which issued Plaintiff a Notice of Right to Sue on June 11, 2010. (Pulis Aff. Ex. C.) Plaintiff received the Notice on June 14, 2010. (Pl. Opp. 3, 6.)

Plaintiff commenced this action pro se on September 10, 2010. (Docket Entry 1.) However, she failed to timely serve the Complaint, so on January 31, 2011, she requested an extension of time to serve and file an amended complaint. (Docket Entry 4.) Magistrate Judge William D. Wall granted Plaintiff's request (Docket Entry 5), and on May 16, 2011, Plaintiff, now represented by counsel, served and filed a First Amended Complaint (Docket Entry 6). Defendant answered on July 18, 2011 (Docket Entry 22) but then consented to Plaintiff's filing the SAC.

---

[2] Defendant, in its moving papers, incorrectly asserts that the Charge was filed on August 10, 2010.

3

The SAC, filed on July 29, 2011, asserts claims against Defendant under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, <u>et seq.</u>, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 <u>et seq.</u> arising out of her termination and demotion. (Docket Entry 30.) On September 29, 2011, Defendant filed both an Answer and a motion to dismiss[3] the SAC. (Docket Entries 33-37.)

## DISCUSSION

Defendant moves to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. However, by answering, Defendant waived its right to seek dismissal under Rule 12(b). <u>See</u> FED. R. CIV. P. 12(b) ("A motion asserting any of these defenses must be made before pleading if a responsive pleading is required."). Nonetheless, the Second Circuit has held that Rule 12(b)(6) motions made after the close of the pleadings "should be construed by the district court as a motion for judgment on the pleadings under Rule 12(c)." <u>See</u> <u>Patel v. Contemporary Classics of Beverly Hills</u>, 259 F.3d 123, 126 (2d Cir. 2001). Thus, the Court will treat Defendant's motion as one for judgment on the pleadings.

---

[3] Defendant moves for "partial" dismissal yet appears to be seeking dismissal of the entire SAC.

4

I.  Standard of Review under Rule 12(c)

The standard for deciding a motion pursuant to Rule 12(c) "is identical to that of a Rule 12(b)(6) motion for failure to state a claim." See id.; Irish Lesbian & Gay Org. v. Giuliani, 143 F.3d 638, 644 (2d Cir. 1998). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations in the complaint to "state a claim [for] relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929, 949 (2007). A complaint does not need "detailed factual allegations," but it demands "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555. In addition, the facts pled in the complaint "must be enough to raise a right to relief above the speculative level." Id. Determining whether a plaintiff has met her burden is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); accord Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555).

In deciding a motion to dismiss, the Court is confined to "the allegations contained within the four corners of [the] complaint." Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998). This has been interpreted broadly to include any document attached to the Complaint, any statements or documents incorporated in the Complaint by reference, any document on which the Complaint heavily relies, and anything of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152–53 (2d Cir. 2002) (citations omitted); Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991).

## II. Defendant's Motion for Judgment on the Pleadings

Defendant reads Plaintiff's SAC to assert causes of action under Title VII and the ADEA for discrimination and retaliation.

### A. Title VII & ADEA Discrimination Claims

Defendant argues that Plaintiff's discrimination claims must be dismissed: (1) as time-barred and (2) for failing to plead an adverse employment action. The Court will address each argument in turn.

#### 1. Statute of Limitations

Employment discrimination claims under Title VII and the ADEA are considered timely if Plaintiff: (1) timely filed an administrative charge, (2) received a right-to-sue letter,

and (3) commenced suit within ninety days of receiving the right-to-sue letter. See 42 U.S.C. § 2000e-5(e), (f); 29 U.S.C. § 626(d). Defendant argues that Plaintiff's Charge was not timely filed.

"Discrimination claims under Title VII and the ADEA must ordinarily be 'filed' with the EEOC within 180 days of the date on which the 'alleged unlawful employment practice occurred.'" Ford v. Bernard Fineson Dev. Ctr., 81 F.3d 304, 307 (2d Cir. 1996) (quoting 42 U.S.C. § 2000e-5(e)(1)); see also 29 U.S.C. § 626(d)(1). "However, if the alleged discrimination took place in a state or locality that has its own antidiscrimination laws and an agency to enforce those laws, then the time period for 'fil[ing]' claims with the EEOC is extended to 300 days." Id. (alteration in original) (quoting 42 U.S.C. 2000e-5(e)(1); 29 U.S.C. §§ 626(d)(2), 633(b)). Thus, in New York, a plaintiff typically has 300 days after the alleged discriminatory act to file a charge with either the EEOC or the NYSDHR. Harris v. City of N.Y., 186 F.3d 243, 247 n.2 (2d Cir. 1999).

Defendant argues that because it is a federal enclave, the 180-day, rather than the 300-day, limitations period applies. (Def. Mot. 3-4.) Plaintiff does not dispute that Defendant is a federal enclave but instead argues that notwithstanding its status as a federal enclave, the 300-day

7

limitations period still applies. (Pl. Opp. 5.) The Court need not decide the issue, however, because Plaintiff's Charge was timely under either period.

"It has long been settled that a claim of employment discrimination accrues for statute of limitations purposes on the date the employee learns of the employer's discriminatory conduct." <u>Flaherty v. Metromail Corp.</u>, 235 F.3d 133, 137 (2d Cir. 2000). In the case of discriminatory discharge, the limitations period "starts running on the date when the employee receives a definite notice of the termination." <u>Miller v. Int'l Tele. & Tele. Corp.</u>, 755 F.2d 20, 23 (2d Cir. 1985). Here, Plaintiff received notice of her discharge on February 10, 2000 (SAC ¶ 34) and filed her Charge with the NYSDHR[4] 172 days later on August 1, 2000 (Rodriquez Aff. Ex. A; Pulis Decl. Ex. B). As such, her claims for discrimination under Title VII and the ADEA are not time-barred.

B. <u>Adverse Employment Action</u>

To establish a prima facie case of gender discrimination under Title VII or age discrimination under the ADEA, Plaintiff must show that: (1) she is a member of a

---

[4] Pursuant to the Provisions of a "Work Sharing Agreement" between the NYSDHR and the EEOC, cross-filing with the agencies are deemed to have occurred whenever a New York complainant files with either agency. <u>See</u> <u>Sundaram v. Brookaven Nat'l Labs.</u>, 424 F. Supp. 2d 545, 559 n.6 (E.D.N.Y. 2006); <u>Govia v. Century 21, Inc.</u>, 140 F. Supp. 2d 323, 325 n.1 (S.D.N.Y. 2001).

8

protected class, (2) she was qualified for the position, (3) she suffered an adverse employment action, and (4) the surrounding circumstances permit an inference of discrimination. See Leibowitz v. Cornell Univ., 584 F.3d 487, 498 (2d Cir. 2009). Defendant argues that Plaintiff failed to plead an adverse employment action because her termination was rescinded before it went into effect. (Def. Mot. 10 n.4; Def. Reply 7.) The Court disagrees.

"A plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment." Galabya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000). To be considered materially adverse, the change must be "more disruptive than a mere inconvenience or an alteration in job responsibilities." Id. (internal quotation marks and citation omitted). The Second Circuit has held that such a change "might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities." Id.; see also Hill v. Rayboy-Brauestein, 467 F. Supp. 2d 336, 351 (S.D.N.Y. 2006). So while a termination that is rescinded with no other adverse consequences does not constitute an adverse employment action, see, e.g., Butler v. Potter, No. 06-CV-3828, 2009 WL 804722, at *13 (E.D.N.Y. Mar.

26, 2009) (finding that an employee whose notice of termination was expunged and who suffered no other adverse consequences such as loss of time or payment did not suffer an adverse employment action); Cheshire v. Paulson, No. 04-CV-3884, 2007 WL 1703180, at *6 (E.D.N.Y. June 12, 2007) (finding that IRS's proposed suspension and, later, termination did not constitute adverse employment actions as both were ultimately rescinded), that is not what happened here. Although Plaintiff's termination was rescinded, she was not reinstated to her previous position or salary. Rather, Plaintiff was demoted with a $13,000 reduction in salary (SAC ¶¶ 36-37), and courts have consistently held that such a demotion constitutes an adverse employment action. See, e.g., Galabya, 202 F.3d at 640; Mathirampuzha v. Potter, 548 F.3d 70, 78 (2d Cir. 2008). Thus, the Court finds that Plaintiff has adequately pled an adverse employment action.

Therefore, to the extent that Defendant's motion seeks dismissal of Plaintiff's discrimination claims, Defendant's motion is DENIED.

B. Retaliation under Title VII and the ADEA

Defendant argues that Plaintiff's retaliation claims must be dismissed because Plaintiff failed to exhaust her administrative remedies prior to commencing this action. Before addressing Defendant's argument, the Court must note that the SAC does not appear to include any cause of action for

10

retaliation.  It clearly lists two, and only two, claims: one for discrimination under Title VII (SAC ¶¶ 52-57) and one for discrimination under the ADEA (SAC ¶¶ 58-63).[5]  Nonetheless, as Defendant seems to think that the SAC contains retaliation claims (and Plaintiff does not dispute that she asserted such claims), the Court will address Defendant's exhaustion argument.

Before bringing a claim under Title VII or the ADEA, a plaintiff must exhaust his or her administrative remedies by filing a claim with either the EEOC or the proper state or local agency.  See Cornwell v. Robinson, 23 F.3d 694, 706 (2d Cir. 1994); Miller, 755 F.2d at 23-24.  Thus, a district court only has jurisdiction to hear claims that were explicitly included in the administrative charge or which are "reasonably related" to the allegations in the charge.  Butts v. N.Y.C. Dep't of Hous. Pres. & Dev., 990 F.2d 1397, 1401 (2d Cir. 1993), superseded by statute on other grounds, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071.  In the present case, Plaintiff's

---

[5] While Plaintiff uses the word "retaliatory" to describe her demotion (SAC ¶ 37 ("On or about March 1, 2000, plaintiff accepted the retaliatory and discriminatory demoted position . . . .")), to establish a prima facie claim of retaliation, a plaintiff must show: "(1) that she participated in a protected activity, (2) that she suffered an adverse employment action, and (3) that there was a causal connection between her engaging in the protected activity and the adverse employment action." Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 110 (2d Cir. 2010) (citing Kessler v. Westchester Cnty. Dep't of Soc. Servs., 461 F.3d 199, 205-06 (2d Cir. 2006)). Nowhere in her SAC does she assert that she participated in any "protected activity" prior to her termination/demotion.

11

Charge did not contain any allegations of retaliatory conduct, and Plaintiff does not dispute this. Instead, she argues that her retaliation claims are "reasonably" related to the allegations in her Charge. The Court disagrees.

A claim is considered reasonably related where an "administrative complaint can be fairly read to encompass the claims ultimately pleaded in a civil action or to have placed the employer on notice that such claims might be raised." Mathirampuzha, 548 F.3d at 77. In order to determine whether Plaintiff's retaliation claims are reasonably related to the claims in her Charge, the Court must examine the factual allegations of discriminatory conduct contained in the Charge itself and determine "whether the complaint filed with the EEOC gave that agency 'adequate notice to investigate discrimination on both bases.'" Williams v. N.Y.C. Hous. Auth., 458 F.3d 67, 70 (2d Cir. 2006) (quoting Deravin v. Kerik, 335 F.3d 195, 202 (2d Cir. 2003)). The Second Circuit has recognized three situations in which claims "reasonably relate" to conduct included in an EEOC charge: (1) where the claims in the civil action "would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination," (2) where the civil claim alleges "retaliation by an employer against an employee for filing an EEOC charge," and (3) where the claims "allege[] further incidents of

discrimination carried out in precisely the same manner alleged in the EEOC charge." Butts, 990 F.2d at 1402-03 (internal quotation marks and citation omitted). None are applicable here.

    1.   <u>Within the Scope of the EEOC Investigation</u>

Plaintiff's Charge simply states that she was terminated (then reinstated and demoted) because of her gender and age. (Rodriquez Aff. Ex. A ¶ 10; Pulis Decl. Ex. B ¶ 10.) However, "[r]etaliation is a theory of liability that is substantively distinct from [an employment] discrimination claim." <u>O'Hara v. Mem'l Sloan-Kettering Cancer Ctr.</u>, 27 F. App'x. 69, 70-71 (2d Cir. 2001). Accordingly, a retaliation claim is not "reasonably related" to an administrative charge simply because the charge asserts a discrimination claim, <u>see Shepheard v. City of N.Y.</u>, 577 F. Supp. 2d 669, 680 (S.D.N.Y. 2008) ("Where the EEOC charge alleges discrimination but not retaliation, the reasonable scope of the agency's investigation cannot be expected to encompass allegations of retaliatory motive."); <u>Sussle v. Sirinia Prot. Sys. Corp.</u>, 269 F. Supp. 2d 285, 314 (S.D.N.Y. 2003) (collecting cases), or refers to the fact that plaintiff suffered some adverse employment action, <u>see, e.g., Morris v. David Learner Assocs.</u>, 680 F. Supp. 2d 430, 437 (E.D.N.Y. 2010). Rather, for a retaliation claim to be "within the scope" of the administrative charge, the charge must

"put the agency on notice that [the plaintiff] had engaged in the type of protected activity that is the predicate to a retaliation claim." O'Hara, 27 F. App'x at 70-71 (citing Fitzgerald v. Henderson, 251 F.3d 345, 366 (2d Cir. 2001)).

Plaintiff's Charge contains no allegations that would lead an investigator to inquire as to any allegedly retaliatory actions: it does not state that she ever complained about the alleged discriminatory treatment or engaged in any other protected activity under Title VII or the ADEA, nor does it contain any reference to a retaliatory motive. Accordingly, Plaintiff's retaliation claims are not "within the scope" of the discrimination claims asserted in the Charge.

### 2. Retaliation for Filing EEOC Charge

Plaintiff also argues that her retaliation claims are "reasonably related" to the discrimination claims in her Charge because "her complaint filed with the Eastern District alleges [Defendant]'s retaliation against plaintiff for filing a charge with the EEOC." (Pl. Opp. 9.) While this is a correct statement of the law--retaliation for filing an EEOC charge is always deemed to be reasonably related to the allegations in the charge, see Butts, 990 F.2d at 1402, Plaintiff's SAC is void of any allegations of discriminatory conduct that occurred subsequent to the filing of her Charge. The SAC asserts that she was demoted on March 1, 2000, and she filed her Charge on

14

August 1, 2000. The fact that Plaintiff remained in a demoted position with a lower salary after filing her Charge does not constitute a separate retaliatory act. See Gilliard v. N.Y. Public Library Sys., 597 F. Supp. 1069, 1077 (S.D.N.Y. 1974) (allegations that Plaintiff's salary remained at lower level "d[id] not represent anything other than mere effects of prior violation"); Malarkey v. Texaco, Inc., 559 F. Supp. 117, 120 (S.D.N.Y. 1982) ("[W]hile employees who have been demoted continue to feel the effects of that demotion in terms of reduced salary and job opportunities, . . . 'the critical question is whether any present violation exists.'" (quoting United Air Lines, Inc. v. Evans, 431 U.S. 553, 558, 97 S. Ct. 1885, 52 L. Ed. 2d 431 (1980)).[6]

   3. Further Incidents of Discrimination Carried Out in Precisely the Same Manner

Lastly, Plaintiff asserts that the SAC "alleges further acts of retaliation, such as her continued demotion, financial loss, and subsequent fabricated performance issues, that were carried out in precisely the same manner alleged in the EEOC charge." (Pl. Opp. 9.) However, for the reasons

---

[6] Plaintiff, in her opposition brief, also asserts that her supervisors continued to fabricate performance issues after she filed her Charge. However, this assertion appears nowhere in the SAC, and "[n]ew claims not specifically asserted in the complaint may not be considered by courts in deciding a motion to dismiss." Lerner v. Forster, 240 F. Supp. 2d 233, 241 (E.D.N.Y. 2003) (citation omitted).

15

articulated above, Plaintiff's continued demotion, financial loss and subsequent fabricated performance issues are not actionable.

Accordingly, the Court finds that Plaintiff did not exhaust her administrative remedies for her Title VII and ADEA retaliation claims, and to the extent that Defendant's motion seeks dismissal of those claims, it is GRANTED.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED IN PART and DENIED IN PART, and Plaintiff's retaliation claims under Title VII and the ADEA are hereby DISMISSED.

SO ORDERED.

/s/ JOANNA SEYBERT_____
Joanna Seybert, U.S.D.J.

Dated:   June 12, 2012
         Central Islip, New York